UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,           Case No. 12-11863
                                                           Honorable Thomas L. Ludington
v.

KASEY McDERMOTT,

    Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION, PARTIALLY DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTIONS *IN LIMINE***

On January 13, 2012, a fire consumed Brien Mathews and Kasey McDermott's home, located on Woodbridge Street in Bay City, Michigan. The fire began during operation of Mathews's butane "honey oil" production lab, which was located in the basement. Nationwide Mutual Fire Insurance Company (Nationwide), the company that insured the home for McDermott, paid a total of $160,209.50 for the loss. But after learning the fire was caused by Mathews's marijuana lab, Nationwide filed this lawsuit to retrieve the payments. On July 15, 2013—after finding that the loss was not accidental and was caused by an increased hazard within Mathews's control—this Court entered an order partially granting Nationwide's motion for summary judgment.[1]

McDermott filed a motion for reconsideration on July 29, 2013. She argues that "[b]oth Nationwide's requirement that the fire be 'accidental' and its increased hazard provision violate the mandatory requirements of MCL 500.2833 and are 'absolutely void.'" Def.'s Mot. 4, ECF

---

[1] The Court determined that the losses were not covered, but as will be discussed, there was not sufficient information to determine whether Nationwide was entitled to any (or all) of the sum it paid to McDermott and on her behalf. Supplemental briefing on the issue was ordered and will be addressed in this Opinion.

No. 37. After reconsideration, the complained-of provisions are not void, and they foreclose coverage for McDermott's losses. Her motion for reconsideration will be denied. However, based on the parties' supplemental briefing, there is a genuine dispute of material fact concerning whether Nationwide's payments on McDermott's behalf were voluntary. Nationwide's motion for summary judgment seeking repayment of the $160,209.50 will be denied.

I

The facts of this case are familiar to the parties and were outlined, in detail, in the Court's July 15, 2013 Opinion and Order. *See* July 15, 2013 Op. & Order 1–11, ECF No. 26. Accordingly, background facts will not be provided here.

II

McDermott's motion for reconsideration is brought pursuant to Local Rule 7.1. *See* Def.'s Mot. 4. Rule 7.1(h) allows a party to bring a motion for rehearing or reconsideration "within 14 days after the entry of the judgment or order." E.D. Mich. LR 7.1(h)(1). Such a motion must demonstrate not only "a palpable defect by which the court and the parties . . . have been misled," but also "that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "[M]otions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication," will not be granted. *Id*.

Concerning Nationwide's motion, summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All

justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III

### A

In her motion for reconsideration, McDermott emphasizes that "fire insurance policies . . . must comply with Chapter 28 of the Michigan Insurance Code, MCL 500.2806 *et seq*." Def.'s Mot. 4. She contends that "[p]rovisions that do not comply with MCL 500.2833 are absolutely void pursuant to MCL 500.2860." *Id*. Because McDermott believes the policy provisions the Court relied upon to deny coverage violate Mich. Comp. Laws § 500.2833 and are therefore "absolutely void," she suggests the Court's decision should be reversed.

The Court first concluded that McDermott's losses were not covered because the fire was not an "accident" under Michigan law. That conclusion is not disputed by McDermott's motion for reconsideration.

The clear, unambiguous language of the policy that Nationwide issued to McDermott (the Policy) establishes that Nationwide "cover[s] *accidental* direct physical loss to property described in Coverages A and B except for losses excluded under Section I – Property Exclusions." Policy C1 (emphasis added), *attached as* Pl.'s Mot. Ex. 2. McDermott contends that such a policy—covering only accidental losses—violates Michigan's standard fire policy provisions. This argument is premised on Mich. Comp. Laws §500.2860, which provides that

"[a]ny provision of a fire insurance policy, which is contrary to the provision of this chapter, shall be absolutely void[.]"

Before January 1, 1992, all fire insurance policies issued in Michigan were required to conform to the standard fire insurance policy language contained in Mich. Comp. Laws § 500.2832. *Williams v. Auto Club. Grp. Ins. Co.*, 569 N.W.2d 403, 404–05 (Mich. Ct. App. 1997). Although § 2832 was repealed in 1992, the Legislature enacted Mich. Comp. Laws § 500.2833 in its place. Section 2833 requires, among other things, that all Michigan fire insurance policies contain, "at a minimum, the coverage provided in the standard fire insurance policy under former section 2832." Mich. Comp. Laws § 500.2833(2); *Borman v. State Farm & Cas. Co.*, 521 N.W.2d 266, 269 (Mich. 1994). And, noted above, "any provision of a fire insurance policy which is contrary to the provision of § 2832 is void." *DKE, Inc. v. Secura Ins. Co.*, No. 278032, 2008 WL 4276481, at *1 (Mich. Ct. App. Sept. 16, 2008) (citation omitted).

Moreover, § 2833 provides that each fire policy issued in Michigan shall, "at a minimum," provide "coverage for direct loss by fire[.]" Mich. Comp. Laws § 500.2833(1)(b). Because the Policy here covers only accidental losses,[2] McDermott argues those provisions "violate[] Chapter 28 of the Michigan Insurance Code." Def.'s Mot. 6.

But the Michigan Court of Appeals has established that a fire insurance policy need not cover all direct losses from fire without regard to the cause. Indeed, in *DKE*, the court addressed a fire-insurance policy that excluded losses from coverage that were caused by "criminal acts" of those "with an interest in the property." *DKE*, No. 278032, 2008 WL 4276481, at *1, *2. The court concluded that "the minimum requirements of the standard fire insurance policy did not

---

[2] Notably, McDermott does not allege that the Policy provisions relied upon by the Court violate § 2832 (despite the fact that § 2832 was incorporated through § 2833(2)). Instead, she focuses on whether the Policy provisions violate § 2833(1)(b), which requires fire-insurance policies to provide coverage for "direct loss by fire[.]" *See* Def.'s Mot. 5.

- 4 -

include coverage for an arson," and accordingly, "policy language specifically excluding such coverage would not provide less coverage than the minimum requirements of the standard fire insurance policy." *Id*; *see also United Gratiot Furniture Mart, Inc. v. Mich. Basic Prop. Ins. Assoc.*, 406 N.W.2d 239, 242 (Mich. Ct. App. 1987) ("We hold that an insurance carrier may assert arson as a defense against a corporation's claim of fire loss"). So, as evidenced above, Michigan courts do not invalidate provisions contained in fire-insurance policies simply because they do not cover all direct losses caused by fire; some losses caused by fire may be excluded (so long as they are done so expressly).

McDermott argues that *Johnson v. State Farm Fire & Cas. Co.*, No. 278267, 2008 WL 4724322 (Mich. Ct. App. Oct. 28, 2008) establishes otherwise. She contends that *Johnson* emphasizes the "mandatory requirement of coverage for direct loss by fire[.]" Def.'s Mot. 5. McDermott's reliance on *Johnson* is misplaced.

In *Johnson*, the court concluded that a policy excluding "vandalism and malicious mischief" from coverage was void, but not because it failed to cover direct loss by fire. Instead, the court indicated that adopting defendant's interpretation of "vandalism and malicious mischief" would allow the defendant to "deny coverage for a direct loss caused by fire where a home has been vacant for '30 consecutive days,' rather than 'sixty consecutive days' as provided in the § 2832 standard policy." *Johnson*, No. 278267, 2008 WL 4724322, at *4 n.1. That is why the vandalism exclusion was "absolutely void," not because it did not cover direct loss by fire, but because it did so in a way that provided less coverage than the standard policy (requiring a house be abandoned for only 30 days rather than 60). In the very next paragraph (which McDermott does not cite), the court indicated:

> [I]f defendant wanted to exclude coverage for direct losses caused by *arson* of a dwelling that has been vacant for more than 60 days—*as permitted by former §*

> *2832*—it would need to specifically list "arson" as an excluded peril. It did not do so. Accordingly, defendant cannot rely on the vandalism exclusion to deny plaintiff's claim for direct loss caused by arson.

*Id*. (second emphasis added). Thus, the court maintained that direct losses caused by fire *can* be excluded consistent with the requirements of Michigan's standard fire policy language, so long as that exclusion is expressly indicated in the policy.

This, too, comports with § 2833. That section establishes that a policy shall provide "coverage for direct loss by fire," § 2833(1)(b), but also that a policy may indicate "[t]hat property which is not covered under the policy"; "[t]hose perils that are not covered under the policy"; and "[t]hose conditions which result in the suspension or restriction of insurance," §§ 2833(1)(d), (e), (f). And this is a directive Nationwide complied with. The Policy established explicitly that only accidental losses would be covered. *See* Policy C1.

So, Michigan courts have concluded that an insurance policy can comply with § 2833 (which includes the former § 2832) without covering all direct losses caused by fire; so long as any exclusions are expressly stated. The Policy here satisfies those requirements, the provision excluding non-accidental losses from coverage is not void, and McDermott's loss is not covered. This point is dispositive, and McDermott's motion for reconsideration will be denied.[3]

**B**

Because the Court again concludes that McDermott's loss is not covered by the Policy, it is necessary to decide whether Nationwide is entitled to any of the approximate $160,000 it paid to McDermott or on her behalf.

Noted above, the Court only granted summary judgment on whether McDermott's loss was covered under Policy language and state law. Lacking sufficient information to decide

---

[3] As McDermott's motion for reconsideration falters on this ground, there is no need to address her argument concerning the "Increased Hazard" exclusion contained in the Policy.

whether she should be ordered to pay the money back, the Court ordered supplemental briefing on the issue, which the parties delivered. Upon review of the parties' submissions, as well as applicable Michigan law, there is a genuine dispute of fact that precludes a determination of whether Nationwide is entitled to repayment of the $160,209.50 it paid under the Policy.

Pursuant to Michigan law,

> As a general rule, a payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund . . . .

*Wilson v. Newman*, 617 N.W.2d 318, 321 (Mich. 2000) (quoting *Smith v. Rubel*, 13 P.2d 1078, 1079 (Or. 1932)). Despite this language, it has also been clearly established that "the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery." *Newman*, 617 N.W.2d at 321 (quoting *Walker v. Conant*, 31 N.W. 786 (Mich. 1887)). Further, pursuant to the voluntary payment doctrine, a "voluntary payment," i.e., "'one made with a full knowledge of all the circumstances upon which it is demanded, and without artifice, fraud or deception on the part of the payer, or duress of the person, or goods of the person making the payment' may not be recovered by the payor." *Jaques v. Baskin*, No. 270715, 2007 WL 57238, at *1 (Mich. Ct. App. Jan. 9, 2007) (quoting *Pingree v. Mut. Gas Co.*, 65 N.W. 6 (Mich. 1895)).

McDermott does not argue that a change in circumstances should prevent Nationwide from recovering the money it paid based on her insurance claim. Instead, over a modest three pages, she argues that Nationwide was "Contractually Obligated To Pay Chase Under the Terms of its Policy" and "Nationwide's payments were voluntary and not recoverable." Def.'s Supp. Br. 2, 3, ECF No. 40. Each argument will be addressed in turn.

**1**

McDermott first argues that the $131,859.29 Nationwide paid to Chase Bank (McDermott's mortgagee) is not recoverable because Nationwide had "a separate enforceable contract between the insurer and mortgagee, entitling the mortgagee to payment if the insured's claim is denied." *Id*. at 2 (citations omitted). The Policy contained the following mortgage clause: "If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. . . . If we deny your claim, that denial will not apply to a valid claim of the mortgagee[.]" Policy E3.

It is true that a standard mortgage clause, such as the one outlined above, creates an independent contract between the mortgagee and the insurer so that the mortgagee's rights under the policy are not subject to forfeiture because of any act or omission of the mortgagor. *See Cole v. Mich. Mut. Ins. Co.*, 321 N.W.2d 839, 841 (Mich. Ct. App. 1982); *Citizens State Bank of Clare v. State Mut. Rodded Fire Ins. Co. of Mich.*, 267 N.W. 785, 787 (Mich. 1936). But Nationwide paid Chase Bank for its interest in McDermott's mortgage, and thus Chase has no interests to assert at this juncture.

Importantly, however, the second portion of the mortgage provision contained in the Policy is a subrogation provision. It contemplates the circumstance here—where Nationwide pays Chase Bank as mortgagee but then denies McDermott's claim for loss:

If we pay the mortgagee for loss and deny payment to you:

a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b) at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

Policy E3. Pursuant to this language, Nationwide is entitled to be subrogated to Chase's legal position after paying the principal on the mortgage. *See*, *e.g.*, *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1491-92 (6th Cir. 1991) ("Standard Fire has denied that it owes any liability to the mortgagor, Wyckoff. Accordingly, if Standard Fire is required to pay the entire amount owing on the Wyckoff mortgages at the time of the fire, it would be entitled to an assignment of these mortgages from the Bank."). Similarly, Nationwide paid McDermott's mortgage, but now claims that McDermott was not entitled to the payments. Thus, McDermott owes any remaining balance to Nationwide, as it is entitled to an assignment of the mortgage obligation. The fact that Nationwide was obligated to pay Chase is of no effect. McDermott's argument on this point is without merit.

### 2

The same cannot be said of McDermott's second argument. She contends that Nationwide made its payments voluntarily and is therefore not entitled to recovery. A genuine dispute of material fact exists concerning this issue that prevents summary judgment on Nationwide's behalf.

Under the doctrine of voluntary payment, a "voluntary payment" may not be recovered by the payor. *Jaques*, No. 270715, 2007 WL 57238, at *1. A "voluntary payment" is "one made with a full knowledge of all the circumstances upon which it is demanded, and without artifice, fraud, or deception on the part of the payer, or duress of the person, or goods of the person making the payment." *Pingree v. Mut. Gas Co.*, 65 N.W. 6, 7 (Mich. 1895). It is also well-settled law that "a payment, although voluntarily made, if made under a mistake of a material fact, may be recovered, even if the mistake be due to a lack of investigation." *Jaques*, No. 270715, 2007 WL 57238, at *1 (quoting *Couper v. Metro Life Ins. Co.*, 230 N.W. 929 (Mich.

1930)). Whether a claim was paid "with sufficient information that the claim was not one contemplated under the terms of [a] policy" presents an issue of fact. *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 611 (Mich. 1951).

Here, McDermott alleges that Nationwide was aware, at the time of payment, that the fire was caused by Mathews's marijuana lab. She concludes that the payment was therefore voluntary and not recoverable. In support of this contention, McDermott attached a summary of findings that was prepared for Nationwide by an independent investigator. *See* Def.'s Supp. Br. Ex. B, at 1. The report was created on January 31, 2012; before Nationwide made any payments on McDermott's behalf. *Id.* In that report, the investigator noted that he met with and interviewed Brien Mathews on January 18, 2012. *Id.* at 2. According to the investigator,

> [Mathews] stated that he was the only person home at the time of the fire. He stated he was downstairs in the basement doing a butane extraction with THC. Per Brian [sic], he is a medical marijuana license holder. Mr. Matthews [sic] stated that he was packing the marijuana in a quart jar with butane to remove the THC, and it is then poured into four pie plates. Mr. Matthew [sic] stated that he waits for butane to evaporate and as wax builds up, he scrapes it off with a razor. Mr. Matthews [sic] stated that he used a lighter to melt the wax from the razor blade when an ember or spark of wax landed in a pie plate, which caught fire.

*Id.* McDermott argues that "Nationwide knew what happened and voluntarily made the payments anyway." Def.'s Supp. Br. 3.

Nationwide, on the other hand, indicates that the payments were made "by mistake without knowing that McDermott had violated the terms and conditions of the policy and that no coverage existed under the terms of the policy because of the illegal marijuana operations." Pl.'s Supp. Br. 1–2, ECF No. 36. But the party seeking recovery must prove that its payment was not voluntary. *See Lingle v. Elmwood Tp.*, 105 N.W. 604, 606 (Mich. 1905). Nationwide offers no evidentiary support indicating its payments were made without knowledge of the facts (particularly relevant in light of the investigator's report outlined above). Because Nationwide

has not carried its burden, and because McDermott has offered evidence to the contrary, the Court will not determine, as a matter of law, whether the payments were voluntary. That question will be left to a jury.

## C

There is one additional issue that must be discussed at this juncture. McDermott filed four motions *in limine* to preclude the admission of various categories of evidence during trial. *See* ECF Nos. 27–30. None of the motions extend beyond two pages. None of the motions explain precisely what statements McDermott is asking the Court to exclude, nor do they offer any semblance of evidentiary support. Further, without knowing more, it is possible that the motions do not relate to the sole issue that remains for trial (whether Nationwide's payments were voluntarily made). Thus, the motions will be denied without prejudice. Should McDermott wish to refile any of her motions, she has until the Court-ordered deadline of September 20, 2013. *See* July 25, 2013 Order 1, ECF No. 31. If any additional motions *in limine* are filed, by either party, the Court suggests that party indicate precisely what evidence they are requesting be excluded, and moreover, precisely why.

## IV

Accordingly, it is **ORDERED** that McDermott's motion for reconsideration, ECF No. 37, is **DENIED**.

It is further **ORDERED** that Nationwide's motion for summary judgment, ECF No. 15, is **DENIED** as it relates to the recovery of payments.

- 12 -

It is further **ORDERED** that McDermott's motions *in limine*, ECF Nos. 27, 28, 29, and 30, are **DENIED** without prejudice.

Dated: September 10, 2013                                              s/Thomas L. Ludington
                                                                      THOMAS L. LUDINGTON
                                                                      United States District Judge

> **PROOF OF SERVICE**
>
> The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 10, 2013.
>
>                              s/Tracy A. Jacobs
>                              TRACY A. JACOBS